HEIRS OF MODESTO ESCALERA FALÚ, ETC., Plaintiffs and Petitioners, *v.* JUSTINO BARRETO ALDAHONDO ET AL., Defendants and Respondents.

No. 11363. Resubmitted May 22, 1958.—Decided September 30, 1959.

---

[19] Jahr, Law of Eminent Domain 225–32 (1957); 5 Nichols, *op. cit.* at 214–21, §§ 19.2–19.23.

*E. Martínez Rivera* and *Edelmiro Martínez, Jr.* for petitioners.
*Francisco Vizcarrondo Morell* for respondents.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

By deed No. 182 of November 7, 1922, executed before Notary Eduardo H. F. Dottin, Octaviano José Herrera and his wife, Eufemia del Pilar Gorbea, segregated four parcels of land from other properties owned by them and later consolidated them with another small farm to form a new property of 11,821.24 sq. meters, located in the site known as "Seboruco," North Section, of the Santurce Ward of the Municipality of San Juan  In the same deed Modesto Escalera Falú, who was married to Fernanda Verdejo since August 29, 1885, stated that he was the owner, by hereditary

title from his father, of a parcel of 2.500 cuerdas, located in the same site known as "Seboruco." Herrera and Escalera Falú then exchanged the said properties. In the same deed Escalera stated that for many years he had held possession of a strip of land of 219.40 sq. meters located to the south of the parcel that he acquired from Herrera by exchange. A certificate of the survey made by engineer Adolfo Rieckehoff, describing the five parcels exchanged with Escalera by Herrera plus the other parcel the possession of which Escalera alleged to have held, is attached at the end of the deed. Said certificate contains a description of the property after making the consolidation of the five parcels which belonged to Herrera. It also describes the consolidation of parcel "F," which is the lot of 219.40 sq. meters which Escalera alleged to have possessed for many years. However, as we shall see later, the truth is that that parcel was not included in the consolidation.

By deed No. 148 of November 7, 1922, executed before Notary José Ramírez Santibáñez, Escalera Falú segregated from the property that he acquired by exchange with Herrera and from the other parcel which he held in his possession, two properties: one of 3,784.79 sq. meters which was segregated from the parcel of 11,821.24 sq. meters, and the other of 152.43 sq. meters which was segregated from that of 219.40 sq. meters, and sold both to Enrique Campillo Abrams, married to María Delgado, the first for $400 and the second for $50. The property of 3,784.79 sq. meters was recorded in the Registry of Property of San Juan in Campillo's name at page 126, vol. 80, of North Santurce, Property No. 4,102, second inscription. In 1925 Campillo sold a one-third interest of this property to Juan B. Aranda.

In deed No. 14 of August 7, 1933, executed before Notary Pedro C. Timothée, Campillo and his wife state that they are owners of two-thirds of the property of 3,784.79 sq. meters which they bought from Escalera Falú and sell their

share of that property to Justino Barreto Aldahondo for $4,500, $500 of which the vendors confessed having received, the purchaser having kept the other $4,000 to pay a mortgage on the property and which was represented by four mortgage notes to bearer of $1,000 each. At the time of this sale Campillo owed Barreto the sum of $500 which was represented by two promissory notes, one for $300 and the other for $200. The last owner and holder of the four mortgage notes, Sinesia Muñoz widow of Cuevas, sold and conveyed them to Justino Barreto Aldahondo by public deed executed in 1936.

The two-thirds condominium belonging to Barreto in the property of 3,784.79 sq. meters was sold at a tax sale on December 29, 1938 and awarded to Dr. Manuel Morales Muñoz for the sum of $508.

On March 7, 1940 Jorge and Arturo Ortiz Toro, attorneys-at-law, signed an agreement by virtue of which they bound themselves to deliver to Barreto the sum necessary to redeem the auctioned property and accordingly gave him a check for $648.69, it having been agreed that after the property was redeemed said attorneys would pay an additional sum of $675 to Barreto within the time fixed by the parties, but which Barreto could terminate at any time, and upon payment of said additional sum, Barreto bound himself to convey the property to Escalera or to whomever the latter indicated, or in default thereof, to attorneys Ortiz Toro. The interest sold at the tax sale was redeemed by Barreto on March 8, 1940.

In 1947 the property of 3,784.79 sq. meters appeared recorded in the Registry of Property of San Juan in Barreto's name as to two-thirds of the property, and as to the other one-third, in Waldemar Bithorn's name, who acquired it from those who derived title from Juan B. Aranda.

By public deed of 1950, executed before Notary Francisco Vizcarrondo, Justino Barreto acquired said one-third condominium by purchase from Waldemar Bithorn thereby con-

solidating the dominion title of Barreto over the whole property of 3,784.79 sq. meters.

Modesto Escalera Falú and his wife Fernanda Verdejo died on February 20, 1946 and May 17, 1931, respectively.

On March 11, 1948 the heirs of Modesto Escalera and his wife, represented by Mr. E. Martínez Rivera, wrote a letter to Barreto summoning him to appear to receive the $675 and sign the deed of conveyance of the property in their favor. Barreto answered that letter alleging that he had no pending obligation whatever with Escalera's heirs.

In 1952 the heirs of Escalera and his wife brought an action against Justino Barreto and his wife Ángela Ortiz. The amended complaint contains three causes of action.

The first alleges that Modesto Escalera consolidated the parcel of 219.40 sq. meters belonging to the conjugal partnership constituted with his wife Fernanda Verdejo, with other tracts of land which belonged to him separately, forming a property of 11,821.24 sq. meters which he recorded in the Registry of Property of San Juan; that in 1922 Modesto Escalera segregated therefrom a parcel of 3,784.79 sq. meters and conveyed it by public deed to Enrique Campillo Abrams; that the consolidation as well as the conveyance to Campillo and the subsequent conveyances, are null and void (1) because Escalera had consolidated land which allegedly belonged to him separately with land belonging to the conjugal partnership, and (2) because Fernanda Verdejo, Escalera's wife, did not give her consent or signature for the consolidation or for the segregation and sale to Enrique Campillo.

In the second cause of action it is alleged that there was no consideration in Escalera's sale to Campillo.

In the third cause of action it is alleged that Barreto has refused to comply with the agreement signed with attorneys Ortiz Toro, and consequently, to convey title of the property in litigation to the plaintiffs as successors in interest of their parents.

The defendants answered and a trial was held on the merits. The lower court, after making the findings of fact and conclusions of law, entered judgment dismissing the complaint, with costs.

██ The first error assigned is devoid of merit. The trial court admitted in evidence the opinion and judgment entered in 1946 by the former District Court of San Juan in Unlawful Detainer proceeding R–1913, brought by Justino Barreto and Waldemar Bithorn against Andrés Gastón Guilberts. The property involved in the unlawful detainer is the same one involved in the present proceeding. The plaintiffs-petitioners complain of the admission of that document.

We disagree. When the defendants introduced that document in evidence, the plaintiffs had already introduced and they had been admitted, copies of a complaint of revendication of the property in litigation filed by Barreto and Bithorn against Gastón and Modesto Escalera, and a motion of voluntary dismissal. Reference is made in these papers to the unlawful detainer proceeding and to the judgment rendered therein. But even assuming that said document was inadmissible, the petitioners have not proved to us, nor have we been convinced, that its admission has caused them any prejudice whatever. Indeed we fail to see how the contents of that document could affect the propriety or impropriety of the three causes of action stated in the complaint. The error, if committed, is not substantial and therefore, does not warrant the reversal of the judgment. Rule 50 of the Rules of Civil Procedure; *Pratt* v. *Reuter*, 79 P.R.R. 907; *Mercado* v. *American Railroad Co.*, 61 P.R.R. 222; *People* v. *Sarria*, 57 P.R.R. 865; *Banco Territorial* v. *González*, 50 P.R.R. 903; *Silva* v. *Carbonell*, 35 P.R.R. 224; *Torres* v. *Am. R. R. Co. et al.*, 34 P.R.R. 661; *Armstrong Bros.* v. *Turner*, 34 P.R.R. 153.

■■ In the second assignment it is argued that the trial court committed error "in concluding as a question of fact, that the parcel of land consisting of 219.40 sq. meters was not consolidated with the tract of land acquired from Octaviano Herrera, by exchange."

This error was not committed either. In Deed of Exchange No. 182, executed November 7, 1922, before Notary Eduardo H. F. Dottin, the Herrera-Gorbea spouses stated that they are owners of five parcels which are described under letters "A," "B," "C," "D," and "E." From each one of those properties they segregate a parcel which they later consolidate to form the property of 11,821.24 sq. meters. This is the property that the Herrera-Gorbea spouses conveyed by exchange to Modesto Escalera. After making the exchange Modesto Escalera sets forth in the tenth clause of said deed that for some years he has been in possession of the property of 219.40 sq. meters. Since the Herrera Gorbeas do not know that they have any right over said parcel they assign it in favor of Escalera. In the following clause of the deed the parties state that the metes and bounds of the property of 11,821.24 sq. meters of land have been fixed in accordance with the titles of the property and the survey and specifications made on October 16, 1922 by civil engineer Adolfo Rieckehoff, submitting a copy of the said plan and the certificate of survey as part of the deed.

A small error committed in the certificate of survey and which can not escape even the worst observer constitutes the basis of the first cause of action. The engineer certifies that at the instance of Modesto Escalera he has measured a property owned by him in the ward of "Seboruco," consisting of six parcels of land, five of which he acquired by purchase from Octaviano Herrera, marked in the plan with letters, "A," "B," "C," "D," and "E," and another parcel by possession, marked in the plan with the letter "F," all of which he describes. Later he consolidates said parcels, stating as

follows: "Consolidation of Parcels "A," "B," "C," "D," and "F." However, the description of parcels "A," "B," "C," "D," and "F," their courses, measurements and surface area correspond to parcels "A," "B," "C," "D," and "E," that is, the engineeer consolidates parcel "E" with parcels "A," "B," "C," and "D." Parcel "F," which is the property of 219.40 sq. meters, is not consolidated. The sum of the area of parcels "A," "B," "C," "D," and "E" gives the total surface area of the parcel of 11,821.24 sq. meters, formed by consolidation. The error in the certificate of survey consists in marking parcel "E" with the letter "F."

The consolidation of the different parcels which formed the property of 11,821.24 sq. meters was made by the Herrera-Gorbea spouses and not by Escalera as the petitioners maintain. When the consolidation was made by deed No. 182, the parcels thus consolidated belonged to the Herrera-Gorbea spouses. After being consolidated they were conveyed by said spouses to Escalera as a new property. It is so obviously not true that the property marked with the letter "F" in the certificate of survey was consolidated and formed part of the property of 11,821.24 sq. meters, that in deed No. 148 subsequently executed on November 7, 1922 before Notary José Ramírez Santibáñez, Escalera states that he owns two properties, one of 11,821.24 sq. meters, and the other of 219.40 sq. meters. The latter is the one marked in the certificate of survey with the letter "F."

By said deed No. 148 Escalera sold two properties to Campillo. One consisting of 3,784.79 sq. meters which was segregated from the property of 11,821.24 sq. meters, and the other measuring 152.43 sq. meters which was segregated from parcel "F" consisting of 219.40 sq. meters. Campillo acquired them as two separate and distinct properties. The property of 3,784.79 sq. meters, which is the property in litigation, was acquired by Barreto as recited above. And

this property originates, by segregation, from the property of 11,821.24 sq. meters which was a property owned separately by Escalera.

It is true that there is not sufficient evidence in the record showing the separate character of the property of 219.40 sq. meters which Escalera alleged had been in his possession and, therefore, we presume that it is community property. *González* v. *Registrar*, 73 P.R.R. 443; *Robles* v. *Guzmán,* 67 P.R.R. 671; *Roselló* v. *Registrar*, 42 P.R.R. 491; *Cortés et al.* v. *Díaz et al.*, 31 P.R.R. 433; *Arroyo* v. *Vicario et al.,* 28 P.R.R. 753; *Acosta* v. *Registrar of Caguas*, 27 P.R.R. 252; *Cádiz* v. *Jiménez*, 27 P.R.R. 598. In order to sell said property or a part thereof, Escalera needed his wife's consent. However, the parcel segregated from said community property and sold by Escalera to Campillo is not in litigation here.

■■ The petitioners argue on review that the separate origin of the property exchanged by Escalera with Octaviano Herrera was not established either and that therefore, the property of 11,821.24 sq. meters should also be presumed to be community property, and that, consequently, the sale of a parcel of that property made by Escalera to Campillo and the subsequent conveyances, are null and void because Escalera's wife did not consent.

This argument does not lie. The nullity of the sale made by Escalera to Campillo was raised in the amended complaint on the ground that Escalera had consolidated property separately owned by him with the property of 219.40 sq. meters which belonged to the conjugal partnership. We have already noted that there was no such consolidation. The defendants were not bound to prove that the other property exchanged by Escalera with Herrera was Escalera's separate property since that was precisely the theory of the plaintiffs-petitioners. Should the plaintiffs have alleged that the property

exchanged by Escalera with Herrera was community property, the defendants would have had the opportunity to present evidence to the contrary.

The plaintiffs-petitioners can not change their theory at this stage of the case. *Latorre* v. *Cruz*, 67 P.R.R. 696 and cases cited at 705.

By virtue of the foregoing, we must conclude that the trial court did not err in deciding that the parcel of 219.40 sq. meters, alleged to be community property, was not consolidated with Escalera's separate property. Therefore, the sale made by Escalera to Campillo and the subsequent conveyances of the parcel segregated from the property of 11,821.24 sq. meters of land, which was separately owned by him, is neither null nor void.

The foregoing also applies to the third and fourth errors. Escalera did not need his wife's consent to segregate and sell separate property owned by him. Section 92 of the Civil Code (31 L.P.R.A. § 285).

■■ The refusal of the lower court to order the specific performance of the agreement signed on March 7, 1940 by Justino Barreto and attorneys Arturo and Jorge Ortiz Toro is ground for the fifth assignment of error. It was not committed either.

Said agreement contains the following clauses, among others:

"Second: It was likewise agreed that said attorneys would pay the sum of $675 to said Justino Barreto within a reasonable period after the property was redeemed, which period would be fixed by common agreement between both parties and which Justino Barreto may terminate at any time and will also be entitled to receive interest on said amount of $675 at the rate of 8 per cent per annum.

"Third: It was likewise agreed that said attorneys would pay the sum of $150 to María Delgado, widow of Campillo, as posthumous deference to the memory of her deceased husband, Enrique Campillo, for the good friendship ties that existed between Justino Barreto and said Enrique Campillo.

"Fourth: It was likewise agreed that once said attorneys, besides having paid the sum necessary for the redemption of the afore-mentioned property, had made the payment of the $675 to said Justino Barreto with its corresponding interest until the date of payment, then said Justino Barreto shall convey and bind himself to convey the afore-mentioned property to Modesto Escalera Falú or to whomever the latter indicates, and in its default, to convey said property to said attorneys Arturo and Jorge Ortiz Toro."

Attorneys Ortiz Toro delivered a check to the order of Barreto for the sum of $648.69, which was the sum estimated by both parties as sufficient to redeem the property. However, they did not pay the $675 to Barreto, nor the interest thereon within the reasonable term established in the second clause of the agreement, nor within the extensions that Barreto gave him therefor. Neither did they pay the $150 to Campillo's widow. Consequently, on August 10, 1942, Barreto wrote to attorneys Ortiz Toro a letter which reads as follows: "Dear Sirs: August 6 being the date of expiration of the third extension requested by you of the agreement stipulated by us with regard to the proposed conveyance of my property of two-thirds of 3,784.79 sq. meters, acquired from Mr. Enrique Campillo, and previously from Modesto Escalera's property, and since you have failed to comply with the stipulations of said agreement of March 7, 1940, as it is expressed therein, I consider the terms thereof as terminated wherefore I am at your disposal so you may notify me of the pertinent liquidation in relation to the mutual interests in said proposed transaction." This letter was not answered.

The aforesaid agreement contained reciprocal obligations. Attorneys Ortiz Toro bound themselves to pay to Barreto, in addition to the sum estimated to redeem the property, the amount of $675 and interests thereon at 8 per cent per annum, within the period fixed by the parties, but which Barreto could terminate at any time. They also bound them-

selves to pay $150 to Campillo's widow. Barreto on his part, bound himself to convey the property to Escalera or to whomever the latter might designate, or in default thereof, to attorneys Ortiz Toro, once they had complied with the agreement. Since Barreto terminated the period for making the payment of the $675, and the extensions which were granted to them had also expired, said amount was not paid to Barreto.

"The right to rescind the obligations" —says § 1077 of the Civil Code (31 L.P.R.A. § 3052)[1] —"is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him." Barreto was entitled to treat the contract as rescinded, as he did in the letter of August 10, 1942, addressed to attorneys Ortiz Toro. See *Federal Land Bank* v. *Echeandía*, 48 P.R.R. 311 and *Camacho* v. *Catholic Church*, 72 P.R.R. 332. One who fails to discharge an obligation assumed by him is not entitled to demand from the other party the performance on his part of the agreement, their duties being mutual and correlative. *Riera* v. *Macías de Riera*, 42 P.R.R. 560, 571.

The foregoing is sufficient to dismiss the fifth error without having to consider the validity of an agreement in which the husband, without the consent of his wife, binds himself to convey the title on real property belonging to the conjugal partnership. *Cf. Berrocal* v. *District Court*, 76 P.R.R. 35;

---

[1] Said § 1077 reads thus:

"The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

"The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

"The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

"This is understood without prejudice to the rights of third acquirers, in accordance with sections 3496 and 3499 of this title, and with the provisions of the mortgage law, Title 30."

*Consolidated Broadcasting Corp.* v. *Conesa,* 65 P.R.R. 745; *Encarnación* v. *Salim,* 69 P.R.R. 715.

█ The sixth, seventh and eighth errors refer to the weighing of the evidence. The petitioners do not discuss them but submit them on the analysis of the case made in discussing the first five errors.

These errors were not committed. The evidence supports the judgment involved in this proceeding. It has not been proved that the lower court committed error in weighing such evidence.

In view of the foregoing the judgment on review will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Belaval did not participate herein.